# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 21-CV-0192 (LDH) (RER)

———————————————

NIMIA SANTOS,

Plaintiff,

VERSUS

CANCUN AND CANCUN CORP ET AL.,

Defendants.

———————————

**REPORT & RECOMMENDATION**

February 17, 2022

———————————

**TO THE HONORABLE LASHANN DEARCY HALL
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Nimia Santos ("Santos" or "Plaintiff") commenced this action on January 13, 2021, against Cancun and Cancun Corp. doing business as Delicias Mexicanas ("Corporate Defendant"); Pedro Dominguez ("Dominguez"); Isauro Valdez ("I. Valdez"); and Donna M. Valdez ("D. Valdez", and, collectively, "Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law §§ 190 and 650 *et seq*. ("NYLL"). (ECF No. 1 ("Compl.")). Currently before the Court is Plaintiff's motion for default judgment (ECF No. 14 ("Pl.'s Mot.")), which Your Honor has referred to me for a report and recommendation. (ECF orders dated 06/07/2021 and 11/10/2021).

1

For the reasons set forth herein, I respectfully recommend that the motion be granted and that default judgment be entered against Defendants, jointly and severally, for: (1) $58,465 in unpaid minimum wages, overtime wages and spread-of-hours pay; (2) $58,465 in liquidated damages; (3) $10,000 in statutory damages under the NYLL; (4) $14,049.75 in pre-judgment interest through the date of this Report, plus an additional amount of $14.41 per diem through the date of judgment; (5) post-judgment interest pursuant to 28 U.S.C. § 1961(a); (6) $8,177.63 in attorneys' fees; and (7) $580 in costs.

## **BACKGROUND**

I. <u>Factual Allegations</u>[1]

Defendants co-own a Mexican restaurant d/b/a Delicias Mexicanas located at 102-14 Roosevelt Ave. in Corona, Queens. (Compl. ¶¶ 6–11) Defendants serve jointly as the Corporate Defendant's officers, managers, agents, and directors. (*Id*.). Santos worked at Delicias Mexicanas as a server from September 2018 until March 2020. (*Id*. ¶ 18). While working at Delicias Mexicanas, Santos was not paid the legally required minimum wage; routinely worked more than forty hours per week without being paid overtime; was not given wage notices and statements as required by law; was not provided with "spread of hours" pay on days she worked more than ten hours; and at times was not paid for all of the hours she worked. (*Id*. ¶¶ 21–23, 34–35).

Santos usually worked five shifts per week; her scheduled shift was from 12:00 am until 8:00 am, though she "often" worked until 9:00 or 10:00 am. (*Id*. ¶ 27; ECF No. 14-2 ("Santos Aff.") ¶ 6). Most weeks, Santos also worked one "double" shift from 12:00 am until 7:00 or 8:00 pm. (Compl. ¶ 28). Santos took off four weeks in 2019 to recover from a medical procedure, but

---

[1] Where, as here, Defendants have defaulted, the Court must accept as true Plaintiff's well-pleaded factual allegations pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir. 1992).

otherwise worked these shifts every week while employed at Delicias Mexicanas. (*Id*. ¶ 26; Santos Aff. ¶ 4). Defendants did not keep proper records of the hours Santos worked. (Compl. ¶ 43). There was no time-clock system for tracking employees' hours. (*Id*. ¶ 60).

Santos was paid $35 per shift for regular shifts and an additional $30 for "double" shifts. (*Id*. ¶¶ 29–30). She also received tips from customers that averaged around $60-$70 per shift. (*Id*. ¶ 31). Defendants did not keep records of these tips. (*Id*. ¶ 32). Santos was not paid hourly and did not receive overtime pay when she worked more than forty hours per week. (*Id*. ¶ 29). She was paid in cash and did not receive documentation about the hours she worked, her hourly rate, or her total pay. (*Id*. ¶ 34). She was not given wage notices or notice of a tip credit. (*Id*. ¶¶ 35–36).

Santos was not paid at all for her final three weeks of work at Delicias Mexicanas, during which she worked sixteen shifts in total. (*Id*. ¶ 39). She was required to wear uniforms to work, and the cost of these uniforms was deducted from her pay. (*Id*. ¶ 40).

Defendants Dominguez, D. Valdez, and I. Valdez participated in the day-to-day operations of Delicias Mexicanas and controlled Santos's job responsibilities, as each had the power to hire and fire employees; make decisions about how much employees would be paid and how they would be paid; assign work schedules; and supervise employees. (*Id*. ¶¶ 8–12). Defendants Dominguez and I. Valdez created payroll policies, maintained payroll records, and signed checks. (*Id*. ¶¶ 13–14). I. Valdez "directed [Santos's] work and supervised her on a regular basis," and D. Valdez supervised Santos on a "daily basis." (*Id*. ¶¶ 15–16).

Dominguez, I. Valdez, and D. Valdez each own stock in Delicias Mexicanas; own and manage Delicias Mexicanas; and make all business decisions there, including decisions about employees'

3

salaries and hours. (*Id*. ¶¶ 44–46). Delicias Mexicanas has annual gross revenues of more than $500,000. (*Id*. ¶ 58).

## II.  Procedural History

Plaintiff commenced this action on January 13, 2021. (Compl.). Her process server served the Corporate Defendant on February 22, 2021, via service on its general agent. (ECF No. 10). Her process server served Dominguez, I. Valdez, and D. Valdez on February 23, 2021, at their place of business, Delicias Mexicanas, and by first-class mail. (ECF Nos. 7–9). Despite proper service,[2] none of the Defendants answered or otherwise appeared. Plaintiff requested that the Clerk of the Court enter default against Defendants, and the Clerk of the Court entered default against all Defendants on April 21, 2021. (ECF No. 12). Plaintiff then moved for an order to show cause on June 3, 2021 (ECF No. 14); that motion was reconstrued as a motion for default judgment (ECF order dated 07/06/2021) and was referred to a magistrate judge for a report and recommendation (ECF order dated 06/07/2021), before ultimately being assigned to me. (ECF order dated 11/10/2021). Plaintiff moves for default judgement on her claims under the FLSA and NYLL, seeking damages for (1) unpaid minimum wages under the FLSA and NYLL; (2) unpaid overtime under the FLSA and NYLL; (3) unpaid spread-of-hours pay under the NYLL; (4) statutory penalties for failure to provide wage notices under the NYLL; (5) liquidated damages under the NYLL; and (6) attorney's fees. (Pl.'s Mot. at 2, 10–12).

---

[2] Service on the individual defendants was proper under N.Y. C.P.L.R. 308, which allows service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business." N.Y. C.P.L.R. 308. Service on the Corporate Defendant was proper under N.Y. C.P.L.R. 311.

# **DISCUSSION**

## I.  Default Judgment

Rule 55, which governs here, specifies a two-step process for entering judgment against a party who fails to defend: "first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Here, the Clerk of Court entered default, satisfying the first step. (ECF No. 12).

In the second step of the default-judgment process, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). At this stage, "the Court must accept Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor." *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *1 (E.D.N.Y. Feb. 12, 2019) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158. However, the court need not accept a plaintiff's legal conclusions; instead, it is the court's "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG) (RER), 2017 WL 3491964, at *1 (E.D.N.Y. July 19, 2017), *adopted by*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017) (quoting *Rolls-Royce plc v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

While a plaintiff's well-pleaded allegations can establish liability in a default judgment, the same standard does not apply to damages. *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *5 (E.D.N.Y. Mar. 5, 2021) (citations omitted), *adopted by*, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021). Instead, a plaintiff must show that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings.

*Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR) (RER), 2021 WL 4464121, at *5 (E.D.N.Y. Aug. 20, 2021), *adopted by*, 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158); Fed. R. Civ. P. 54(c). The court may, but is not required to, hold a hearing on the amount of damages. *Id.*, at *5; Fed. R. Civ. P. 55(b)(2). Instead of holding a hearing, the court "may rely on 'detailed affidavits and documentary evidence,' as well as the Court's knowledge of the record from experience with the case." *Id.* (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). "If an employer fails to maintain wage and hour records, the plaintiff may rely on his recollection to approximate the wages owed." *Id.* (citing *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332-33, 335 (S.D.N.Y. 2005)).

## II.  Liability Under FLSA and NYLL

Plaintiff alleges minimum-wage and overtime violations of the FLSA and NYLL, as well as failure to provide spread-of-hours pay and wage notices and statements under the NYLL. (Compl. ¶¶ 1–2).

Under both the FLSA and NYLL, there must be an employer-employee relationship for there to be liability. *Liu v. Millenium Motors Sports*, No. 17-CV-06438 (RPK) (RER), 2021 WL 4268136, at *3 (E.D.N.Y. May 24, 2021) ("As a threshold matter, Plaintiffs must establish that a non-exempt employer-employee relationship existed under the FLSA and NYLL"), *adopted by*, 2021 WL 3463193 (E.D.N.Y. Aug. 6, 2021); *see also Miguel v. Mi Bella Puebla Corp.*, No. 16-CV-01593 (SJ)(RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017), *adopted by*, 2017 WL 4838761 (E.D.N.Y. Oct. 24, 2017). In addition to showing an employee-employer relationship, a plaintiff must also establish that they were not exempt from FLSA or NYLL protections, and that they were inadequately compensated. *Nikolaeva*, 2017 WL 3491964, at *2 (citing *Espinoza v.*

*Indus. Glass & Mirror Inc.,* No. 16-CV-0064 (ARR)(RER), 2016 WL 7650592, at *2 (E.D.N.Y.

Nov. 30, 2016) *adopted by*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017)).

### A.  Defendants are Employers under the FLSA and NYLL

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of

an employer in relation to an employee." 29 U.S.C. § 203(d). An employer is subject to the FLSA

if the plaintiff employee is either "(1) 'engaged in commerce or in the production of goods for

commerce,' (individual coverage)," or (2) employed in an "enterprise engaged in commerce or in

the production of goods for commerce" whose "annual gross volume of sales made or business

done is not less than $500,000" (enterprise coverage). 29 U.S.C. § § 203(s)(1)(A)(i)-(ii), 206(a)

and § 207(a)(1)); *1923 Sneaker, Inc*., 2021 WL 1845057, at *3 (quoting *Rocha v. Bakhter Afghan

Halal Kababs, Inc*., 44 F. Supp. 3d 337, 342 (E.D.N.Y. 2014)); *Kantor v. Air Atl. Med., P.C.*, No.

19-CV-03597 (EK) (ST), 2021 WL 3888067, at *5 (E.D.N.Y. July 7, 2021), *adopted by*, 2021 WL

3884193 (E.D.N.Y. Aug. 31, 2021). "Plaintiffs bear the burden of alleging *specific* facts which

would allow the Court to infer defendants' liability[.]" *Kantor*, 2021 WL 3888067, at *5 (quoting

*Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at

*3 (E.D.N.Y. Sept. 1, 2015), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)). However,

judges in this district "have inferred FLSA coverage from the nature of the employer's business,

notwithstanding . . . pleading deficiencies" and found that a defendant is engaged in interstate

commerce for the purposes of enterprise coverage by the nature of its business. *Id*. (finding

conclusory allegations about defendants' participation in interstate commerce sufficient to infer

enterprise liability for a medical office in New York City because "courts have noted that virtually

every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA,

[making somewhat conclusory allegations of involvement in interstate commerce] sufficient to

meet the pleading requirement for an FLSA claim in a default proceeding") (internal quotation marks and citations omitted); *Cardoza*, 2015 WL 5561033, at *4 ("It is logical to infer that a supermarket's products and produce would have originated outside of New York. Plaintiffs have, therefore, provided an adequate factual basis for inferring that Defendants" are engaged in interstate commerce for the purposes of enterprise coverage).

Here, Plaintiff has alleged that Defendants had gross annual revenues exceeding $500,000 and were employers "engaged in interstate commerce and/or the production of goods for commerce." (Compl. ¶¶ 56, 58). These allegations, though somewhat conclusory, are sufficient to infer that the FLSA applies to Defendants via enterprise coverage when Defendants owned and operated a Mexican restaurant that handles a wide range of ingredients and supplies that traveled through interstate commerce. *See Hristova v. 3321 Astoria Inc.*, No. 17-CV-1633 (RER), 2018 WL 4006880, at *8 (E.D.N.Y. June 27, 2018) ("Unless Defendants can show that every item in the restaurant from the cleaning supplies to the paper napkins to the beverages served were made in the state of New York, the presumption is that [defendant restaurant] is 'engaged in commerce' under § 203(s)(1)(A)(i)."). Therefore, Plaintiff has established enterprise coverage under the FLSA and thereby shown that the Corporate Defendant was her employer. *Palaghita*, 2021 WL 4464121, at *9 ("A corporate employer is subject to FLSA liability if the employer meets the criteria for either enterprise or individual coverage.") (internal quotation marks and citations omitted).

Further, Plaintiff has shown that the individual Defendants meet the definition of "employers" under the FLSA and NYLL. Courts in the Second Circuit use an "economic reality" test to determine whether an individual is an employer. *Saleem v. Corp. Transportation Grp.*, Ltd., 854 F.3d 131, 139 (2d Cir. 2017). "An individual is an employer under FLSA if they: (1) make hiring and firing decisions; (2) supervise and control an employee's work schedule or employment

8

conditions; (3) determine an employee's pay rate or method; and (4) maintain employment records." *Palaghita*, 2021 WL 4464121, at *8. Here, Plaintiff has alleged specific facts that all of the individual defendants participated in making hiring and firing decisions, supervised and controlled Plaintiff's work, determined rates and methods of employee pay, and, to the extent that such records were kept at Delicias Mexicanas, kept employment records. (Compl. ¶¶ 8–12). Therefore, Plaintiff has shown that all Defendants were employers under the FLSA.

Under the NYLL, the definition of "employer" centers on what degree of control the employer exercised over the employee. *Palaghita*, 2021 WL 4464121, at *8. "Generally, where liability is found under the FLSA, it is also found under the NYLL." *Id.* (collecting cases). As such, Plaintiff has also shown that Defendants were employers under the NYLL. *Kantor*, 2021 WL 3888067, at *6 ("Because [the NYLL] definition is similar to the FLSA's definition, courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (internal quotation marks omitted).

B. Plaintiff Was A Non-Exempt Employee Under the FLSA and NYLL

Under the FLSA, an employee is defined as "any individual employed by an employer[.]" 29 U.S.C. § 203(e). Certain employees within this broad definition are considered exempt from FLSA coverage. *Nikolaeva*, 2017 WL 3491964, at *2. The types of employees who are not exempt include (1) "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;" and (2) employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); *Palaghita*, 2021 WL 4464121, at *9. The definition of "employee" under the NYLL is "nearly identical to the FLSA standard." *Id*.

As discussed above, Plaintiff has shown that she was employed by an enterprise engaged in interstate commerce. Further, restaurant servers like Plaintiff are not exempt from FLSA coverage. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) ("jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA"). Therefore, Plaintiff has shown she was a nonexempt employee under the FLSA and NYLL.

### C. Plaintiff Was Inadequately Compensated

Under the FLSA and the NYLL, employers are required to pay employees a certain minimum wage, as well as overtime wages of one-and-one-half times their regular rate of pay for all hours worked in excess of forty hours in any given week. 29 U.S.C. § 207(a); NYLL § 651; 12 NYCRR § 142-2.2; *Nikolaeva*, 2017 WL 3491964, at *3. "Under the FLSA and the NYLL, employers in some circumstances may apply a tip credit against the full minimum wage that would otherwise be owed to an employee, such as a waiter, who regularly receives tips." *Fermin*, 93 F. Supp. 3d at 38; *Hristova*, 2018 WL 4006880, at *4 ("The FLSA allows employers to pay employees who 'customarily and regularly receive tips' less than the standard minimum wage in effect under section 206(1) if the employer meets certain statutory requirements."); *Wen Jian Lu v. Taco Hut Place, Inc.*, No. 15-CV-7147 (RER), 2017 WL 10186298, at *3 (E.D.N.Y. Apr. 28, 2017) ("NYLL dictates that "the wage for an employee who is a food service worker receiving tips shall be a cash wage of at least two-thirds of the minimum wage rate."). However, under both the FLSA and the NYLL, employers must provide notice of the tip credit in order for it to apply. *Taco Hut Place, Inc.*, 2017 WL 10186298, at *3; *Hristova*, 2018 WL 4006880, at *4. Plaintiff was never given a notice that a tip credit would be taken out of her wages. (Compl. ¶ 36). As such, the tip credit does

not apply, and Plaintiff was "entitled to receive the statutory minimum wage throughout [her] employment." *Taco Hut Place, Inc.*, 2017 WL 10186298, at *3.

Plaintiffs must provide sufficient information regarding periods of unpaid work to "support a reasonable inference that they worked more than 40 hours per week." *Id*.; (*quoting Kleitman v. MSCK Mayain Olam Habba Inc.*, No. 11-CV-2817 (SJ)(JMA), 2013 WL 4495671, at *4 (E.D.N.Y. Aug. 20, 2013). Plaintiff has done so here, providing proof that she worked five shifts per week averaging nine hours, plus an additional shift of up to twelve hours most weeks. (Compl. ¶¶ 27–28). She earned $35 per shift and an additional $30 for "double" shifts. (*Id*. ¶¶ 29–30). This constitutes clear underpayment based on the minimum wage in New York at the time of Plaintiff's employment.

***

Accordingly, I respectfully recommend that Your Honor grant default judgment on Plaintiff's FLSA and NYLL claims and hold Defendants jointly and severally liable under the FLSA and NYLL. *Fermin*, 93 F. Supp. 3d at 37.

## III.  Damages

Both the FLSA and NYLL provide that employees have a right to collect unpaid or uncompensated wages. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1) (McKinney 2015). An employee bringing an action for unpaid compensation bears the burden of proving that he was not compensated for work performed. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *7 (E.D.N.Y. Sept. 1, 2015), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). When an employer's records are inadequate, a plaintiff-employee may meet this burden solely through his or her recollection. *Id.* Here, Plaintiff has submitted a declaration that

describes, inter alia, dates of employment, hours worked per week, and wages paid, which is sufficient to calculate damages.

### A. Unpaid Wages

#### 1. Minimum Wage

Plaintiff seeks unpaid minimum wages under the FLSA and NYLL. (Compl. at 17). Under both laws, plaintiffs are entitled to recover the difference between the effective hourly rate they were paid and the statutory minimum wage in New York. *See* 29 USC § 216(b); N.Y. Lab. Law § 663.

Plaintiff says she worked an average of fifty-six hours per week, including five regular shifts of approximately nine hours each, plus a "double" shift of eleven hours once per week. (Compl. ¶¶ 27–28; Santos Aff. ¶¶ 6–7). Defendants paid Plaintiff $35 for regular shifts and an extra $30 for the "double" shift, totaling $205 per week. (Compl. ¶¶ 29–30; Santos Aff. ¶ 9; ECF No. 14-10 "Pl.'s Damages Chart")). Plaintiff's regular hourly rate therefore is $5.12 ($205/40 hours).[3] In 2018, the statutory minimum wage in New York, was $13 per hour for business with more than eleven employees;[4] in 2019 and 2020 the minimum wage was $15 per hour. N.Y. Lab. Law § 652. Plaintiff's wages fell well below the statutory minimum. As such, I respectfully recommend awarding Plaintiff $30,065 in unpaid minimum wages.[5]

---

[3] Plaintiff was employed in the hospitality industry and is therefore covered under New York's "Hospitality Wage Order." *See* 12 N.Y.C.R.R. § 146-3.1 ("The term hospitality industry includes *any restaurant* or hotel ..." (emphasis added)).  The Hospitality Wage Order provides that "[i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings ... by the lesser of 40 hours or the actual number of hours worked by that employee during the workweek." *Id.* § 146-3.5(b).
[4] Delicias Mexicanas had approximately seventeen employees during the time Plaintiff worked there. (Santos Aff. ¶ 17).
[5] Calculations relating to unpaid wages can be found in the Appendix.

### 2. Unpaid Overtime

Plaintiff seeks unpaid overtime wages under the FLSA and NYLL. (Compl. at 17). Under both the NYLL and FLSA, plaintiffs are entitled to compensation at a rate of one-and-one-half times the minimum wage for any hours worked in a week beyond forty hours. *See* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Courts assume that an employee's weekly salary is intended to serve as payment of forty hours per week unless there is an express agreement showing otherwise. *Palaghita*, 2021 WL 4464121, at *10.

Here, Plaintiff was not given any overtime compensation, but regularly worked more than forty hours per week. (Compl. ¶ 29). As such, I respectfully recommend that Plaintiff be awarded damages for unpaid overtime compensation at a rate of one-and-one-half times the minimum wage for all hours she worked over forty in each week of her employment, totaling $27,264.[6]

### 3. Spread of Hours Pay

Plaintiff seeks spread-of-hours pay under the NYLL. Under the NYLL, "an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours." *Fermin*, 93 F. Supp. 3d at 45 (quoting *Man Wei Shiu v. New Peking Taste Inc.,* No. 11-CV-1175 (NGG) (RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014)) (citing N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.4).

Plaintiff has shown that she was paid well below the minimum wage, and that she worked shifts longer than ten hours once per week when she worked "double" shifts. (Compl. ¶¶ 28–30). Therefore, Plaintiff is entitled to one extra hour of pay at the minimum wage for each week she

---

[6] Calculations relating to unpaid overtime can be found in the Appendix.

worked. As such, I respectfully recommend that the Court grant Plaintiff spread-of-hours damages in the amount of $1,136.[7]

B. Liquidated Damages

Plaintiff seeks liquidated damages under the NYLL.[8] (Pl.'s Mot. at 11). Under the NYLL, as well as the FLSA, plaintiffs are entitled to liquidated damages in an amount equal to their unpaid wages. N.Y. Lab. Law § 663(1); 29 U.S.C. § 216(b). Both laws give the court discretion in awarding liquidated damages when the employer has acted in good faith, however, an employer who defaults, as Defendants have, fails to make a showing of good faith. *Palaghita*, 2021 WL 4464121, at *11; *Fermin*, 93 F. Supp. 3d at 47 ("As Defendants have not appeared, they have not established good faith to rebut the liquidated damages presumption"). As such, Plaintiff "is entitled to recover 'one hundred percent of the total amount of wages found to be due' under the NYLL[.]" *Kantor*, 2021 WL 3888067, at *9 (quoting *Thompson v. Hyun Suk Park*, No. 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *9 (E.D.N.Y. Sept. 1, 2020), *adopted by*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020)). Therefore, I respectfully recommend that the Court award Plaintiff 100% of the minimum wage, overtime, and spread-of-hours damages she is entitled to under the NYLL in liquidated damages, for a total of $58,465. *See Hyun Suk Park*, 2020 WL 5822455, at *9.

---

[7] Plaintiff worked for 17 weeks in 2018, when the minimum wage was $13 per hour, entitling her to 17 X $13 = $221 for that period; she worked 48 weeks in 2019, when the minimum wage was $15 per hour, entitling her to 50 X $15 = $720 for that period; she worked 13 weeks in 2020, when the minimum wage was $15 per hour, entitling her to 13 X $15 = $195 for that period. (*See* Pl.'s Damages Chart). In total, Plaintiff is entitled to $221 + $720 + $195 = $1,136 in spread-of-hours pay.

[8] Plaintiff does not seek duplicative liquidated damages under the FLSA, nor would she be entitled to them. *Palaghita*, 2021 WL 4464121, at *11 (internal quotation marks and citations omitted) ("Because there are no meaningful differences between the FLSA and NYLL liquidated damages provisions, a party may not recover duplicative liquidated damages for the same conduct").

C.  NYLL Statutory Damages

Plaintiff seeks statutory wage-notice damages under the NYLL totaling $10,000: $5,000 for the lack of an annual wage notice and $5,000 for the lack of a weekly wage statement. (Pl.'s Mot. at 13). Under § 195(1) of the NYLL, an employee who does not receive a wage notice "may recover . . . damages of fifty dollars each work day that the violations occurred . . . but not to exceed a total of five thousand dollars[.]" NYLL § 198(1-b). Similarly, under § 195(3) of the NYLL, an employee who does not receive wage statements "shall recover . . . damages of two hundred fifty dollars for each workday that the violations occurred . . . but not to exceed a total of five thousand dollars[.]" NYLL § 198(1-d). Plaintiff alleges that she "was not provided with a proper, written, wage notice, as required by law" and that "Defendants did not provide Plaintiff, with accurate written statements properly accounting for her actual hours worked and setting forth her hourly rate of pay, regular wages, and/or overtime wages." (Compl. ¶¶ 82–87). Plaintiff's allegations sufficiently show that Defendants were not compliant with the NYLL wage notice and wage statement requirements.

Accordingly, I respectfully recommend that the Court award Plaintiff $50 per day in damages for violations of § 195(1) of the NYLL, totaling $5,000, as well as $250 per day in damages for violations of § 195(3) of the NYLL, totaling $5,000. *See Kantor*, 2021 WL 3888067, at *9.

D.  Pre- and Post-Judgment Interest

Plaintiff seeks pre- and post-judgment interest on damages. (Pl.'s Mot. at 18).

Plaintiffs may recover pre-judgment interest for NYLL claims. *E.g., Palaghita*, 2021 WL 4464121, at *12; *see also Calle v. Yoneles Enter., Inc.*, No. 16 Civ. 1008 (NGG) (RLM), 2017 WL 6942652, at *9 (Oct. 24, 2017), at *17 & n.22 (pre-judgment interest appropriate for withheld wages, overtime wages and spread-of-hours damages, but not liquidated or statutory damages). In

New York, pre-judgment interest is assessed at a rate of nine percent per annum. N.Y.C.P.L.R. §§ 5001(a), 5004. "Interest may be calculated from a single reasonable intermediate date, which, in cases such as this, is sensibly the midpoint of a plaintiff's employment." *Palaghita*, 2021 WL 4464121, at *12. Here, the midpoint of Plaintiff's employment was June 18, 2019. As such, I respectfully recommend that Plaintiff be awarded $14,049.75 in pre-judgment interest through the date of this Report and Recommendation, plus additional interest calculated through the date that the Clerk of Court enters final judgment at the per diem rate of $14.41.[9]

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a). "Post judgment interest rates are calculated 'from the date of the entry of judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgement.'" *Id*. (quoting 28 U.S.C. § 1961(a)). Accordingly, I respectfully recommend that the Court award Plaintiff post-judgment interest from the date of entry of judgment in accordance with Section 1961. *See Palaghita*, 2021 WL 4464121, at *12.

E.  Attorneys' Fees

The NYLL and FLSA both allow prevailing plaintiffs to collect reasonable attorneys' fees from the defendant. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198. "Plaintiffs seeking reimbursement of attorney's fees bear the burden of proving the reasonableness and the necessity of the hours spent and the rates charged." *Palaghita*, 2021 WL 4464121, at *12 (citing *Fermin*, 93 F. Supp. 3d at 51).

Courts have broad discretion to determine what constitutes a reasonable fee. *Id*. Generally, a reasonable rate is determined by multiplying the reasonable numbers of hours spent on a case by

---

[9] $58,465 (total amount of minimum wage, overtime and spread of hours damages) x .09 (statutory rate)/365 (days per year) = $14.41 per diem. 975 (days between 6/18/19 and 2/17/22) x 14.41 = $14,049.75

a reasonable hourly rate based on the prevailing hourly rate for similarly experienced attorneys in the district in which the court sits. *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI) (RER), 2018 WL 9945754, at \*8–9 (E.D.N.Y. Oct. 17, 2018). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Palaghita*, 2021 WL 4464121, at \*12 (quoting *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at \*8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *adopted by*, 2020 WL 5259056 (Sept. 3, 2020)). To determine whether the number of hours claimed is reasonable, courts must use their experience with the case as well as with the practice of law, and exclude hours that are "excessive redundant, or otherwise unnecessary" to the case. *Singh v. A & A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at \*9 (E.D.N.Y. Sept. 30, 2019) (quoting *Cho v. Koam Medical Servs. P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007)). However, Courts need not become "green-eyeshade accountants" or look to "achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiff requests attorneys' fees totaling $9,505 for 27.3 hours of work. (Pl.'s Mot. at 14; ECF No. 14-11 "Lodestar"). The fee reflects the work of two attorneys: Peter H. Cooper, Esq., who logged 21.5 hours of work, and Estee L. Ward, Esq., who recorded 5.8 work hours. (Pl.'s Mot. at 15; Lodestar).

Mr. Cooper requests a rate of $400 per hour. *Id*. He was first admitted to practice in New York in 1997 and founded his firm, Cilenti & Cooper, PLLC, in 2009, at which point he began to practice employment law. (Pl.'s Mot. at 15). For FLSA cases in this district, rates of $400 or higher have generally been reserved for attorneys with more experience than Mr. Cooper. *See Gunter v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-1804 (WFK) (RER), 2021 WL 966147, at \*3

(E.D.N.Y. Feb. 25, 2021) (collecting cases showing that rates of $400 per hour and above are reserved for attorneys with decades of experience litigating FLSA cases), *adopted by*, 2021 WL 964921 (E.D.N.Y. Mar. 15, 2021). Further, this case was fairly straightforward and not overly complicated. As such, I respectfully recommend Mr. Cooper's hourly rate be reduced to $375 per hour. *See Chocolatl v. Rendezvous Cafe*, Inc., No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *15 (E.D.N.Y. Aug. 16, 2019) (reducing Mr. Cooper's rate to $375 from $400 in a case that was relatively straightforward in part due to defendants' default), *adopted by*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020); *Cuevas*, 2013 WL 3057715, at *2 ("Though the case proceeded through trial, the issues were relatively straightforward and the case was not particularly complex. Accordingly, the Court finds that a rate of $350 an hour for [] Mr. Cooper's services to be reasonable.").

Ms. Ward works for co-counsel Make the Road New York. (Pl.'s Mot. at 15). She was admitted to practice in New York in 2019 and has four years of litigation experience, including three years of experience representing plaintiffs in wage-and-hour cases. *Id*. She seeks a rate of $225 per hour. *Id*. This is in line with hourly rates for similarly experiences attorneys in this district, *see, e.g. Liu*, 2021 WL 4268136, at *10 (approving an hourly rate of $250 for an attorney with six years of experience and two years of labor and employment experience); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15-CV-5737(ADS) (ARL), 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) (reducing to $225 the hourly rate of an attorney with three years of relevant experience) *adopted by*, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017); as such, I respectfully recommend that Ms. Ward's fees be assessed at an hourly rate of $225.

As to the number of hours worked, Courts may use their discretion to reduce fees that appear inflated or that include "attorney time billed for clerical or administrative tasks." *Cortes v. Juquila*

*Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *6 (E.D.N.Y. Mar. 29, 2021). "A district court is not obligated to undertake a line-by-line review of a fee application; it may instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'" *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020) (quoting *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014)). Here, counsel had no paralegals working on the case, and billed for all time at the highest attorney rate; additionally, counsel includes several vague entries for attorney time, including some for correspondence in an unspecified "related claim." (Lodestar). As such, I respectfully recommend a ten percent reduction in the number of hours. *See Cuevas*, 2013 WL 3057715, at *3 (reducing Mr. Cooper's hours by ten percent).

Further, Mr. Cooper has billed for 1.5 hours of travel time at his full rate. In this district, "travel costs are typically compensated at 50% the attorney's hourly rate." *Singh v. Zoria Hous. LLC*, No. 16-CV-2901 (SJ) (RER), 2017 WL 6947717, at *4 (E.D.N.Y. Nov. 17, 2017) (collecting cases), *adopted by*, 2018 WL 437492 (E.D.N.Y. Jan. 16, 2018). Therefore, I respectfully recommend billing for those hours at half of Mr. Cooper's rate.

Accordingly, I respectfully recommend granting attorney's fees in the amount of $8,177.63, including $7,003.13[10] for Mr. Cooper and $1,174.50[11] for Ms. Ward.

F. Costs

Plaintiff seeks to recover costs and service fees associated with this action, specifically $178 in service fees. (Pl.'s Mot. at 2; ECF No. 14-11). Plaintiff also paid a filing fee of $402. (ECF No.

---

[10] The figure was calculated by reducing Mr. Cooper's total hours by 10% (21.5 X .9 = 19.35), then billing the non-travel hours at the rate of $375 and billing the travel time at half that rate, or $187.50.
[11] This figure reflects 90% of Ms. Ward's hours billed at $225 per hour (5.22 X $225).

1). "Both the FLSA and New York state law provide for an award of costs." *Fermin*, 93 F. Supp. 3d at 52 (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4)). As such, I respectfully recommend that the Court award Plaintiff $580 in costs.[12]

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion for default judgment be granted and that judgment be entered against Defendants, jointly and severally, for : (1) $58,465 in unpaid minimum wages, overtime wages and spread-of-hours pay; (2) $58,465 in liquidated damages; (3) $10,000 in statutory damages under the NYLL; (4) $14,049.75 in pre-judgment interest through the date of this Report, plus an additional amount of $14.41 per diem through the date of judgment; (5) post-judgment interest pursuant to 28 U.S.C. § 1961(a); (6) $8,177.63 in attorneys' fees; and (7) $580 in costs.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable LaShann DeArcy Hall within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).⌗

RESPECTFULLY RECOMMENDED

_____
RAMON E. REYES, JR.
United States Magistrate Judge

_____
[12] $178 + $402 = $580.

## APPENDIX – UNPAID WAGES[13]

| | Period 1 | Period 2 | Period 3 | Period 4 |
|---|---|---|---|---|
| Date Range | 9/1/2018-12/31/2018 | 1/1/2019-12/31/2019 | 1/1/2020-3/12/2020 | 3/13/2020-3/27/2020[14] |
| Weeks Worked | 17 | 48 | 10 | 3 |
| Average Overtime Hours Per Week | 16 | 16 | 16 | 16 |
| Regular Hourly Wage[15] | $5.12 | $5.12 | $5.12 | $0 |
| Weekly Minimum Wage (Minimum Wage X 40 hours) | $520 | $600 | $600 | $600 |
| Weekly Wage Received[16] | $205 | $205 | $205 | $0 |
| Minimum Wages Due | $8,840[17] | $28,800[18] | $6,000[19] | $1,800[20] |
| Overtime Wages Due | $5,304[21] | $17,280[22] | $3,600[23] | $1,080[24] |
| Wages Paid[25] | $3,485 | $9,840 | $2,050 | $0 |
| Unpaid Minimum Wages | $5,355 | $18,960 | $3,950 | $1,800 |
| Unpaid Wages Due Per Period | $10,659 | $36,240 | $7,550 | $2,880 |
| Unpaid Spread of Hours | $221 | $720 | $150 | $45 |
| **Total Wages Due** | **$58,465** | | | |

[13] Calculations based on Plaintiff's affidavit (Santos Aff.), the Complaint, and Pl.'s Damages Chart.
[14] Plaintiff was not paid at all for her last three weeks of work. (Compl. ¶ 39).
[15] Total weekly wages / 40; $205 / 40 = $5.12.
[16] Plaintiff received $35 per regular shift ($35 X 5), plus $30 for "double" shifts, totaling $205 per week. (Compl. ¶¶ 27–30; Pl.'s Damages Chart).
[17] $520 X 17.
[18] $600 X 48.
[19] $600 X 10.
[20] $600 X 3.
[21] $19.50 X 16 hours X 17 weeks.
[22] $22.50 X 16 hours X 48 weeks.
[23] $22.50 X 16 hours X 10 weeks.
[24] $22.50 X 16 hours X 3 weeks.
[25] Weeks Worked X Weekly Wage Received.